J-S12043-21
J-S12044-21
J-S12045-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH KALIN MYHRE | : | |
| | : | |
| Appellant | : | No. 1490 EDA 2020 |

Appeal from the PCRA Order May 6, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0002356-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH KALIN MYHRE | : | |
| | : | |
| Appellant | : | No. 1634 EDA 2020 |

Appeal from the PCRA Order Entered May 6, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003076-2017

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH KALIN MYHRE | : | |
| | : | |
| Appellant | : | No. 1635 EDA 2020 |

Appeal from the PCRA Order Entered May 6, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003077-2017

J-S12043-21
J-S12044-21
J-S12045-21

BEFORE: LAZARUS, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MAY 18, 2021**

Joseph Kalin Myhre ("Myhre"), *pro se*, appeals, *nunc pro tunc*, from the

Orders[1] dismissing his first Petitions for relief filed pursuant to the Post

Conviction Relief Act ("PCRA").[2]  We affirm.

The PCRA court set forth the history underlying the instant appeal as

follows:

> While a resident of Montgomery County, Pennsylvania, [Myhre] physically victimized his wife and children on multiple occasions.  Specifically, from 2015-2017, [Myhre] struck his wife, Jill Myhre [("Ms. Myhre"),] at least ten (10) times on separate occasions.  These assaults involved [Myhre] using his fist and striking Ms. Myhre in the head with a stick as well as other items.  In one instance, [Myhre] hit Ms. Myhre on the ear repeatedly, causing disfigurement of her ear known as cauliflower ear.  In 2015, [Myhre] grabbed his wife's hand and hit it with enough force to cause a fracture[,] which required surgery and the insertion of screws.  On one occasion, [Myhre] stabbed Ms. Myhre's hand with a steak knife[,] which resulted in a permanent scar.

> From 2015-2017, [Myhre], on several occasions, placed himself on top of Ms. Myhre, pinned her down with his legs and proceeded to strangle her.  In March 2017, [Myhre] put his hand around Ms. Myhre's neck and impeded her ability to breathe.  On or about March 14, 2017, [Myhre] repeatedly hit his wife in the

---

[1] Myhre filed identical Petitions at each docket number.  The PCRA court entered identical Opinions at each docket number.  In addition, Myhre and the Commonwealth have entered identical briefs at each docket number.  Accordingly, we will address the issues raised in one Memorandum.

[2] 42 Pa.C.S.A. §§ 9541-9546.

- 2 -

back of her head[,] which ultimately caused her to suffer a skull fracture.

[Myhre] struck his son and daughter, [the ("Children")] in their heads repeatedly, resulting in traumatic brain injuries. During these incidents, [Myhre] used a PVC pipe, sticks and sometimes a closed fist. [Myhre] hit [Children] at least weekly in the period from 2015-2017. During this same period, [Myhre] would occasionally pin [Children] on the ground and sitting [*sic*] on them so they could not move, and he would strike or strangle them at the same time. Also during this time period, [Myhre] placed lancets under [Children's] nails[,] which caused them pain.

On one occasion, [Myhre] commanded [the Children] to place a shock collar on their bodies and he would activate the collar, thereby causing [Children] to suffer pain. Between January 1, 2017[,] and March 14, 2017, [Myhre] strangled [Children] by putting his hands around their necks and squeezing, thereby impeding their ability to breathe.

Authorities arrested [Myhre] on March 15, 2017, following the March 14, 2017[,] assault in which his wife suffered a skull fracture. On February 27, 2018, [Myhre] entered into a negotiated plea agreement in which he pled guilty to three (3) counts of aggravated assault (serious bodily injury), two (2) counts of aggravated assault (serious bodily injury with a deadly weapon), two (2) counts of aggravated assault (serious bodily injury where victim is less than 13 years of age), three (3) counts of strangulation, eighteen (18) counts of simple assault, one (1) count of unlawful restraint, two (2) counts of unlawful restraint of a minor where offender is victim's parent[,] and two (2) counts of endangering the welfare of a child.[FN] As part of the plea agreement, the court sentenced [Myhre] to the agreed aggregate sentence of twenty (20) to forty (40) years of imprisonment and twenty-seven (27) years of concurrent probation….

---

[FN] [**See**] 18 Pa.C.S.A. §§ 2702(a)(1), 2702(a)(4), 2702(a)(9), 2718(a)(1), 2701(a)(1), 2902(a)(1), … 2902(c)(1) and 4304(a)(1)[,] respectively.

---

On February 14, 2019, [Myhre] filed a timely PCRA Petition. On February 27, 2019, the court appointed PCRA counsel. On March 26, 2019, counsel filed a "no-merit" letter dated March 27, 2019[,] and a supplemental "no[-]merit" letter dated April 2, 2019, in accordance with **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) [(*en banc*)], together with a Petition to Withdraw as Court Appointed Counsel for [Myhre] dated March 27, 2019.

PCRA Court Opinion, 9/15/20, at 1-3 (footnote in original). After appropriate Notice pursuant to Pa.R.Crim.P. 907, to which Myhre responded, the PCRA court granted counsel's Petition to Withdraw, and dismissed Myhre's PCRA Petition.

The interim procedural history is not relevant to the instant appeal.[3] Ultimately, on July 7, 2020, the PCRA court issued an Order reinstating Myhre's right to appeal the dismissal of his first PCRA Petition, *nunc pro tunc*, within 30 days. Myhre's *pro se* Notice of Appeal at 1490 EDA 2020 was docketed on August 17, 2020. This Court issued a Rule to Show Cause as to why Myhre's appeals at the remaining docket numbers should not be quashed as untimely filed. In his Response to the Rule, Myhre indicated that he filed three separate Notices of Appeal, one for each of his three docket numbers, in a single envelope, on July 31, 2020. However, Myhre claimed that only the

_____

[3] On appeal of a second PCRA Petition filed by Myhre, this Court reinstated Myhre's appeal rights, as to the dismissal of his first PCRA Petition, *nunc pro tunc*. **See Commonwealth v. Myhre**, 239 A.3d 43 (Pa. Super. 2020) (unpublished memorandum).

- 4 -

appeal at 1490 EDA 2020 was properly noted on the docket. Myhre claims that he alerted the county clerk of courts as to the error, but the error was not corrected. Myhre has since provided a copy of the envelope he used to mail the Notices of Appeal, date stamped July 31, 2020. Myhre also has provided a cash slip for the mailing. The cash slip does not indicate whether the envelope was mailed. However, under these circumstances, we will consider Myhre's Notices of Appeal to be timely filed.[4]

Myhre presents the following claims for our review:

1. [Whether] trial counsel was ineffective for failing to respond, reject, or rebut the Motion to Amend filed by the Commonwealth[?] Furthermore, [c]ounsel was aware of an alibi defense pre-Motion to Amend[,] and instead advised [] Myhre to rush [into] a plea agreement, thereby compromising the integrity of the defense.

2. [Whether] sentencing counsel was ineffective for failing to request a Pre-Sentence Investigation (PSI) and instead waive it in open court[?] ….

3. [Whether] trial/sentencing counsel was ineffective for failing to request that [] Myhre receive an evaluation pursuant to the Pennsylvania Mental Health Procedures Act[,] 50 P.S. § 1701[] *et seq.* [("MHPA"),] to determine whether he was fully competent to stand trial due to his documented mental health issues and psychiatric treatment[?]

4. Did [] Myhre suffer layered ineffective assistance of counsel [] on appeal[,] where counsel failed to investigate/argue the inherent issues herein[?]

_____

[4] ***See Commonwealth v. DiClaudio***, 210 A.3d 1070, 1074 (Pa. Super. 2019) (recognizing that, in accordance with the "prisoner mailbox rule," "a *pro se* prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing.").

Brief for Appellant at 5-6 (unnumbered) (some capitalization omitted).

As our Supreme Court has explained,

[u]pon reviewing an order in a PCRA matter, we must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions are free from error. The findings of the PCRA court and the evidence of record are viewed in a light most favorable to the prevailing party. The PCRA court's credibility determinations, when supported by the record, are binding; however, this [C]ourt applies a *de novo* standard of review to the PCRA court's legal conclusions. We must keep in mind that the petitioner has the burden of persuading this Court that the PCRA court erred and that such error requires relief. Finally, this Court may affirm a valid judgment or order for any reason appearing of record.

*Commonwealth v. Montalvo*, 205 A.3d 274, 286 (Pa. 2019) (citations omitted).

Myhre's claims each assert the ineffective assistance of his prior counsel. Counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [the] appellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010).

To satisfy this burden, an appellant must plead and prove by a preponderance of the evidence that[] "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." *Commonwealth v. Fulton*, … 830 A.2d 567, 572 ([Pa.] 2003). Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim. *Commonwealth v. Jones*, … 811 A.2d 994, 1002 ([Pa.] 2002).

*Commonwealth v. Holt*, 175 A.3d 1014, 1018 (Pa. Super. 2017).

Myhre first claims that his trial counsel rendered ineffective assistance by failing to "respond, reject, or rebut the Motion to Amend filed by the Commonwealth." Brief for Appellant at 9 (unnumbered). Myhre argues that he was "charged by Montgomery County … for crimes alleged to have occurred approximately two (2) years prior to him residing in Pennsylvania." *Id.* at 14 (unnumbered). In particular, Myhre challenges his counsel's failure to respond to the Commonwealth's Motion to Amend the Bills of Information, which sought to change the date ranges of the crimes alleged in the initial indictment. *Id.* According to Myhre, counsel instead informed him that the Commonwealth already had changed the dates and would be proceeding to trial. *Id.* According to Myhre, this information was false, and caused him to plead guilty. *See id.* Myhre asserts that the Commonwealth had lacked jurisdiction to prosecute these crimes, as he was not in the jurisdiction at the beginning of the date range set forth in the Commonwealth's criminal Information. *Id.* Further, Myhre asserts that the Commonwealth would not have been allowed to amend the dates had counsel responded to the Motion to Amend. *Id.* This abandonment by counsel, Myhre asserts, was *per se* ineffective assistance of counsel. *Id.* at 15 (unnumbered). Myhre further argues that counsel's misrepresentation to him constituted fraud. *Id.*

In its Opinion, the PCRA court thoroughly addressed Myhre's claim, and concluded that it is without merit. *See* PCRA Court Opinion, 9/15/20, at 4-12. The PCRA court's findings are supported in the record, and its legal

conclusions are sound. *See id.* We therefore affirm on the basis of the PCRA court's Opinion with regard to this claim. *See id.*

In his second claim, Myhre argues that his counsel rendered ineffective assistance by not requesting a PSI. Brief for Appellant at 17 (unnumbered). Myhre asserts that his prior counsel had entered into an agreement with the Commonwealth that a PSI would be prepared prior to sentencing. *Id.* According to Myhre, this PSI "would have contained information that could have influenced the court to potentially impose a lesser sentence in the event that the court did not accept the plea agreement." *Id.* at 17-18 (unnumbered). Myhre asserts that information regarding his prior record and mental health might have secured a more favorable plea and more lenient sentence. *Id.* at 18 (unnumbered). Myhre asserts "that he was ill-advised to state on the record that he wished to waive his PSI[,] as it is entirely plausible that the [c]ourt could have refused the negotiated plea[,] due to the potential findings[,] and as a result created a highly prejudicial situation." *Id.*

The PCRA court, in its Opinion, addressed this claim and concluded that it lacks merit. *See* PCRA Court Opinion, 9/15/20, at 12-14. We agree and affirm on the basis of the PCRA court's Opinion with regard to this claim.[5] *See id.*

---

[5] We note that Myhre expressly waived a PSI in his written guilty plea colloquy. Written Plea Colloquy, 2/28/16, ¶¶ 40-42.

- 8 -

In his third claim, Myhre argues that his trial and sentencing counsel rendered ineffective assistance by failing to request that he receive a mental health evaluation in accordance with the MPHA. Brief for Appellant at 19 (unnumbered). According to Myhre, his counsel improperly failed to request a hearing to determine whether his diagnosis of autism and attention deficit hyperactivity disorder ("ADHD") impacted his ability to participate in the court proceedings. *Id.* at 20 (unnumbered). Myhre states that counsel's failure to conduct any pretrial investigation constitutes a clear case of ineffective assistance of counsel. *Id.* at 21 (unnumbered). According to Myhre, "if trial counsel would have conducted an investigation into [] Myhre's background, she would have seen that he meets all of the requirements set forth in *Commonwealth v. Miller*, 888 A.2d 624 (Pa. 2005).[6] *Id.* at 23 (unnumbered). Myhre argues that trial counsel had no reasonable basis for failing to investigate this issue. *Id.*

---

[6] In *Atkins v. Virginia*, 546 U.S. 304 (2002), the United States Supreme Court held that the federal Constitution "'places a substantive restriction on the State[s'] power to take the life of a mentally retarded person," *id.* at 321 (citation and internal quotation marks omitted). However, the Supreme Court left to the states the task of developing the appropriate procedures for enforcing this substantive restriction. *Id.* at 317. Recognizing the lack of legislation on this issue, our Supreme Court in *Miller* held that an individual, faced with the death penalty, is "intellectually disabled for purposes of the Eighth Amendment if he demonstrates (1) limited intellectual functioning; (2) significant adaptive limitations; and (3) onset prior to age 18." *Commonwealth v. VanDivner*, 178 A.3d 108, 111 (Pa. 2018). The instant case does not involve the death penalty.

Initially, we observe that Myhre did not raise this claim in his PCRA Petition. Rather, Myhre claimed that he was unaware of the consequences of his guilty plea. *See* PCRA Petition, 2/14/19, at 8 (stating "the court did not advise [Myhre] of potential consequences of pleading guilty."). Consequently, we cannot address this claim for the first time on appeal. *See* Pa.R.A.P. 302(a) (stating that a claim cannot be raised for the first time on appeal).

In his fourth claim, Myhre argues that all prior counsel failed to investigate/argue "the inherent issues herein." Brief for Appellant at 24 (unnumbered). In support, Myhre argues that "an appeal is a right and should be addressed by competent counsel. [] Myhre suffered clear [ineffective assistance of counsel] by both trial counsel and PCRA appointed [c]ounsel." *Id.* at 24-25 (unnumbered). However, Myhre does not develop his claim of layered ineffective assistance by PCRA counsel.[7] Myhre fails to present any argument on the three prongs of an ineffectiveness claim as to PCRA counsel. *See Commonwealth v. Reid*, 99 A.3d 470, 482 (Pa. 2014) (requiring that a petitioner must present argument, "in briefs or other court memoranda, on the three prongs of the [ineffectiveness test] as to each relevant layer of representation."); *Holt*, *supra*. Because Myhre has failed to do so, we cannot grant him relief on his layered claim of ineffective assistance of PCRA counsel.

---

[7] As set forth above, Myhre's prior claims of ineffective assistance of counsel lack merit.

- 10 -

J-S12043-21
J-S12044-21
J-S12045-21

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2021



# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : <br> : | **Common Pleas Court Nos.:** <br> CP-46-CR-0002356-2017 <br> CP-46-CR-0003076-2017 |
| v. | : <br> : | CP-46-CR-0003077-2017 |
| | : | **Superior Court No.:** |
| JOSEPH KALIN MYHRE | : <br> : <br> : <br> : | 1488 EDA 2020[1] <br> 1490 EDA 2020 <br> 1634 EDA 2020 <br> 1635 EDA 2020[2] |

## OPINION

**ROTHSTEIN, J.**                                                                        **September 11, 2020**

Appellant, Joseph Kalin Myhre, ("Defendant") appeals *nunc pro tunc* from this court's May 6, 2019 Order which dismissed Defendant's Petition for Post-Conviction Relief ("PCRA Petition") without an evidentiary hearing. For the reasons that follow, the Order is proper and should be affirmed.

### FACTS AND PROCEDURAL HISTORY

While a resident of Montgomery County, Pennsylvania, Defendant physically victimized his wife and children on multiple occasions. Specifically, from 2015 to 2017, Defendant stuck his wife, Jill Myhre at least ten (10) times on separate occasions. These assaults involved Defendant using his fist and striking Ms. Myhre in the head with a stick as well as other items. In one instance, Defendant hit Ms. Myhre on the ear repeatedly, causing disfigurement of her ear referred to as cauliflower ear. In 2015, Defendant grabbed his wife's hand and hit it with enough force to cause a fracture which required surgery and the

---

[1] Under this docket number, it appears Defendant filed a notice of appeal under the mistaken belief that his direct appeal rights with respect to the February 27, 2018 judgment of sentence have been reinstated *nunc pro tunc*. Any such appeal of the judgment of sentence, however, is untimely and must be quashed. *See Commonwealth v. Wrecks*, 934 A.2d 1287, 1289 (Pa.Super. 2007). This court has included this docket number within this opinion in order to avoid any confusion.

[2] Defendant raises identical issues under the last three (3) docket numbers. Accordingly, for ease of disposition, this court will issue one opinion with respect these three (3) docket numbers.

insertion of screws. On one occasion, Defendant stabbed Ms. Myhre's hand with a steak knife which resulted in a permanent scar.

From 2015-2017, Defendant, on several occasions, placed himself on top of Ms. Myhre, pinned her down with his legs and proceeded to strangle her. In March 2017, Defendant put his hand around Ms. Myhre's neck and impeded her ability to breathe. On or about March 14, 2017, Defendant repeatedly hit his wife in the back of her head which ultimately caused her to suffer a skull fracture.

Defendant struck his son and daughter, M.M. and R.M. respectively, in their heads repeatedly, resulting in traumatic brain injuries. During these incidents, Defendant used a PVC pipe, sticks and sometimes a closed fist. Defendant hit his children at least weekly in the period from 2015-2017. During this same period, Defendant would occasionally pin M.M. and R.M on the ground and sitting on them so they could not move, and he would strike or strangle them at the same time. Also during this time period, Defendant placed lancets under M.M. and R.M.'s nails which caused them pain.

On one occasion, Defendant commanded M.M. and R.M. to place a shock collar on their bodies and he would activate the collar, thereby causing M.M. and R.M. to suffer pain. Between January 1, 2017 and March 14, 2017, Defendant strangled M.M. and R.M. by putting his hands around their necks and squeezing, thereby impeding their ability to breathe.

Authorities arrested Defendant on March 15, 2017, following the March 14, 2017 assault in which his wife suffered a skull fracture. On February 27, 2018, Defendant entered into a negotiated plea agreement in which he pled guilty to three (3) counts of aggravated assault (serious bodily injury), two (2) counts of aggravated assault (serious bodily injury with a deadly weapon), two (2) counts of aggravated assault (serious bodily injury where victim is less than 13 years of age), three (3) counts of strangulation, eighteen (18) counts of simple assault, one (1) count of unlawful restraint, two (2) counts of unlawful restraint of a minor where offender is victim's parent and two (2) counts of endangering the welfare of a

2

child.[3] As part of the plea agreement, the court sentenced Defendant to the agreed aggregate sentence of twenty (20) to forty (40) years of imprisonment and twenty-seven (27) years of concurrent probation. The court also ordered that Defendant shall have no contact with the victims, Jill Myhre, R.M. and M.M. Defendant did not file any post-sentence motions or a notice of appeal.

On February 14, 2019, Defendant filed a timely PCRA Petition. On February 27, 2019, the court appointed PCRA counsel. On March 26, 2019, counsel filed a "no-merit" letter dated March 26, 2019 and a supplemental "no merit" letter dated April 2, 2019, in accordance with *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988), together with a Petition to Withdraw as Court Appointed Counsel for Defendant dated March 27, 2019.

On April 4, 2019, the court filed its Notice Pursuant to Pa.R.Crim.P. 907(1) of its Intention to Dismiss Defendant's PCRA Petition Filed February 14, 2019 Without a Hearing. That same date, the court granted PCRA counsel's Motion to Withdraw as Court Appointed Counsel for Defendant. On April 11, 2019, Defendant filed a *pro se* "Motion for Extension of Time and Appointment of New Counsel." On May 6, 2019, the court dismissed Defendant's PCRA Petition without an evidentiary hearing (the "May 6, 2019 Final Order"). That same date, the court denied Defendant's Motion for Extension of Time and Appointment of New Counsel.

On August 23, 2019, Defendant filed a *pro se* "Petition for Reinstatement of Appeal Rights *Nunc Pro Tunc*", which indicated he had not received a copy of the May 6, 2019 Final Order which dismissed Defendant's PCRA Petition without an evidentiary hearing. The court denied this petition on August 26, 2019. Upon further investigation, the court discovered that Defendant had not received the May 6, 2019 Final Order.

On September 12, 2019, Defendant filed a notice of appeal from the August 26, 2019 Order which denied Defendant's Petition for Reinstatement of Appeal Rights *Nunc Pro Tunc*. Defendant filed the September 2019 notice of appeal prior to the court's discovery that he had not received the May 6, 2019

---

[3] 18 Pa.C.S.A. §§ 2702(a)(1), 2702(a)(4), 2702(a)(9), 2718(a)(1), 2701(a)(1), 2902(a)(1), 2902(a)(1), 2902(c)(1) and 4304(a)(1) respectively.

3

Final Order. In light of its discovery that Defendant had not received the May 6, 2019 Final Order, this court filed an opinion with the Pennsylvania Superior Court which detailed the procedural history of this matter and addressed the merits of Defendant's February 14, 2019 PCRA Petition.

In an opinion filed July 2, 2020, the Superior Court vacated this court's August 26, 2019 order[4] and remanded the matter to this court with instructions to grant Defendant's August 23, 2019 petition, which would give Defendant thirty (30) days to file a *nunc pro tunc* appeal from the May 6, 2019 Final Order. This court issued the requisite order on July 7, 2020. Defendant filed a timely notice of appeal with respect to Docket Number 2356-2017 on July 30, 2020. Defendant filed untimely notices of appeal with respect to Docket Numbers 3076-2017 and 3077-2017 on August 17, 2020.[5]

In Defendant's February 14, 2019 PCRA Petition and PCRA counsel's "no merit" letter submitted in accordance with *Turner/Finley*, Defendant's issues are presented as follows:

> [WHETHER DEFENSE] COUNSEL WAS INEFFECTIVE BY FAILING TO RESPOND, REBUT OR REJECT THE MOTION TO AMEND THE BILLS OF INFORMATION[?]
>
> [WHETHER DEFENSE] COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST A PRE SENTENCE INVESITGATION (PSI)[?]

(March 26, 2019 *Turner/Finley* "No Merit" Letter at 27, 28).

## DISCUSSION

## I. ALLEGED INEFFECTIVENESS OF COUNSEL WITH RESPECT TO BILLS OF INFORMATION

"The standard of review for an order denying post-conviction relief is limited to whether the record supports the PCRA court's determination, and whether that decision is free of legal error."

---

[4] In its opinion, the Superior Court did not address the merits of Defendant's February 14, 2019 PCRA Petition.

[5] On July 23, 2020, Defendant filed a motion for extension of time to file these appeals, but this court does not have the power to enlarge the time for filing a notice of appeal and therefore did not rule on the motions. *See Commonwealth v. Smith*, 501 A.2d 273 (Pa.Super. 1985). Despite the untimeliness of Defendant's notices of appeal with respect to these docket numbers, this court has addressed the merits of Defendant's issues raised in these appeals considering they are identical to the issues he raised in his timely appeal.

4

*Commonwealth v. Taylor*, 933 A.2d 1035, 1040 (Pa.Super. 2007), *appeal denied*, 597 Pa. 715, 951 A.2d 1163 (2008) (internal citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Id.* (internal citation omitted).

In his first issue, Defendant claims trial counsel was ineffective for failing to object or respond to the Commonwealth's motions to amend the bills of information with respect to Docket Numbers 3076-2017 and 3077-2017.[6] It appears that Defendant may be claiming that he was not a Montgomery County, PA resident for the entirety of the time ranges listed in the bills of information for these two docket numbers, and therefore, this court would not have jurisdiction over Defendant for the charges listed. Defendant seems to aver that his trial counsel should have objected to the Commonwealth's attempt to amend the date ranges.

It is well established that counsel is presumed effective, and the defendant bears the burden of proving ineffectiveness. *Commonwealth v. Cooper*, 596 Pa. 119, 941 A.2d 655, 664 (2007). To overcome this presumption, a defendant must demonstrate that the underlying substantive claim has arguable merit. *Commonwealth v. Lewis*, 708 A.2d 497, 500 (Pa.Super. 1998), *appeal denied*, 555 Pa. 741, 725 A.2d 1219 (1998). "If the claim is without merit, [the court's] inquiry ends because counsel will not be deemed ineffective for failing to pursue an issue which is without basis." *Id.* "Even if the underlying claim has merit, the [defendant] still must establish that the course of action chosen by counsel had no reasonable basis designed to effectuate the client's interests...." *Id.* To the extent a defendant demonstrates counsel's actions or failure to act had no reasonable basis, the defendant still must prove that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 312, 724 A.3d 326, 333 (1999).

Instantly, the bills of information for Docket Number 3077-2017 charge that Defendant committed the crimes charged in this specific bill between Saturday January 1, 2011 and Tuesday, March 14, 2017. On February 15, 2018, the Commonwealth filed a Motion to Amend the Bills of Information to change

---

[6] The Commonwealth did not file a Motion to Amend the Bills of Information with respect to Docket Number 2356-2017.

5

this date range to the time period between Wednesday September 1, 2010 and Monday, March 13, 2017. On February 20, 2018, the court issued an order directing Defendant to file a response to the Commonwealth's motion by February 23, 2018. Prior to this deadline, Defense counsel notified the court that Defendant wished to proceed with a non-trial disposition. On February 21, 2018, the court issued an order scheduling this matter for a non-trial disposition on February 27, 2018.

On February 27, 2018, Defendant pled guilty to, *inter alia*, twelve (12) counts listed under the bills of information for Docket Number 3077-2017. During the guilty plea proceeding, the Commonwealth did not proceed on the Motion to Amend the Bills of Information on this docket number, nor did the court issue any orders related to this motion. The Commonwealth also offered the following factual basis with respect to the charges presented in the bills of information for Docket Number 3077-2017 and Defendant responded as follows:

| | |
|---|---|
| [PROSECUTOR]: | Moving on to file 3077 of 2017, you understand that you're admitting on this file that over the last two years, you struck Jill Myhre at least ten times on separate occasions; is that correct? |
| [DEFENDANT] | I didn't hear the date. Was there – |
| [PROSECUTOR]: | Within the last two years. |
| [DEFENDANT]: | Oh yes. |
| [PROSECUTOR]: | When striking her on different occasions, you would use your fist? |
| [DEFENDANT]: | Yes. |
| [PROSECUTOR]: | Do you agree with that? And you also hit her in the head with a stick as well as other items; is that correct? |
| [DEFENDANT]: | Yes. |
| [PROSECUTOR]: | You admit that you struck Jill Myhre on the head repeatedly, hitting her ear, which caused disfigurement of her ear, referred to as cauliflower ear. Do you admit that? |
| [DEFENDANT]: | Yes. |

6

| | |
|---|---|
| [PROSECUTOR]: | You also admit in 2015, you grabbed Jill's hand and hit her hand enough times to cause a break in her hand to the point where she required surgery and screws in her hand; is that correct? |
| [DEFENDANT]: | Yes. |
| [PROSECUTOR]: | You also admit on one occasion, you stabbed Jill's hand with a steak knife, leaving a permanent scar on her hand; is that correct? |
| [DEFENDANT]: | Yes. |
| [PROSECUTOR]: | And during the last two years, on different occasions, you did get on top of Jill Myhre, pinned her down with your legs, and proceeded to strangle her, putting her at risk of serious bodily injury? |
| [DEFENDANT]: | Yes. |
| [PROSECUTOR]: | In March of 2017, do you admit that you put your hand around Jill's neck and impeded her ability to breathe by doing so? |
| [DEFENDANT]: | Yes. |
| [PROSECUTOR]: | And all of these incidents that you're admitting to happened in Collegeville, Montgomery County? |
| [DEFENDANT]: | Yes. |
| [PROSECUTOR]: | And you moved to Montgomery County in 2010; is that correct? |
| [DEFENDANT]: | 2010 to Blue Bell and then to Collegeville in 2011. |

(N.T. Guilty Plea, 2/27/18, at 24-25). The record demonstrates that, with respect to Docket Number 3077-2017, Defendant acknowledged all of the incidents under this docket number relating to Jill Myhre took place in Montgomery County, PA and occurred between 2015 and 2017. This was within the range set forth in the bills of information. The Commonwealth also did not actually proceed on their Motion to Amend the Bills of Information. In light of these facts, the Commonwealth's proposed amendment to the bills of information for Docket Number 3077-2017 had no bearing upon the ultimate disposition of the

7

matter or Defendant's decision to plea guilty and Defendant's ineffectiveness claim has no merit. *See Lewis, supra.*

The bills of information for Docket Number 3076-2017 charge that Defendant committed the crimes charged in this specific bill between Tuesday, January 1, 2008 and Monday, March 13, 2017. On February 15, 2018, the Commonwealth filed a Motion to Amend the Bills of Information to change the date range to the time period between Monday, September 12, 2011 and Monday, March 13, 2017. On February 20, 2018, the court issued an order directing Defendant to file a response to the Commonwealth's motion by February 23, 2018. Prior to this deadline, Defense counsel notified the court that Defendant wished to proceed with a non-trial disposition. On February 21, 2018, the court issued an order scheduling this matter for a non-trial disposition on February 27, 2018.

On February 27, 2018, Defendant pled guilty to, *inter alia*, twenty-two (22) counts listed under the bills of information for Docket Number 3076-2017. During the guilty plea proceeding, the Commonwealth did not proceed on the Motion to Amend the Bills of Information on this docket number, nor did the court issue any orders related to this motion. The Commonwealth also offered the following factual basis with respect to the charges presented in the bills of information for Docket Number 3076-2017 and Defendant responded as follows:

| [PROSECUTOR]: | Moving on to file 3076 of 2017, you admit in the last five years, up until March 14 of 2017, you struck your daughter, initials RM, in the head repeatedly, causing her traumatic brain injury; is that correct? |
|---|---|
| [DEFENDANT]: | Yes. |
| [PROSECUTOR]: | And RM's date of birth – her birthday is 4/11/2005. Would you agree with that? |
| [DEFENDANT]: | That is correct. |
| [PROSECUTOR]: | When you struck her in the head, you used a PVC pipe, stick, and sometimes your fist on different occasions; is that correct? |
| [DEFENDANT]: | Yes. |

8

| | |
|---|---|
| [PROSECUTOR]: | You admit that you would hit them at least weekly in the last two years before you were incarcerated on March 14th of 2017; is that correct? |
| [DEFENDANT]: | March what? |
| [PROSECUTOR]: | March 14th of 2017, the last two years prior to that. |
| [DEFENDANT]: | Yes, yes. |
| [PROSECUTOR]: | And on – you admit that on occasion in the last two years, also before March 14th of 2017, on occasion, you would pin RM down on the ground so she could not move, by sitting on her, and you would strike or strangle her, putting her at risk for serious bodily injury. Do you agree? |
| [DEFENDANT]: | Yes. |
| [PROSECUTOR]: | And you admit in the last two years that you did put lancets under RM's nails, causing her pain? |
| [DEFENDANT]: | Yes. |
| [PROSECUTOR]: | And you also admit that you commanded RM to place a shock collar on her body and would shock her, causing her pain? |
| [DEFENDANT]: | May I ask? |
| [PROSECUTOR]: | Absolutely. |
| [DEFENDANT]: | Was that in the information we went over? Yes. |
| [PROSECUTOR]: | You admit that between January 1st of 2017 and March 14th of 2017, you did strangle RM by putting your hands around her neck and squeezing, impeding her ability to breathe; is that correct? |
| [DEFENDANT]: | Yes. |
| [PROSECUTOR]: | And you admit that as her father, you owed a duty of care, and you violated that duty of care by striking and strangling her routinely, at least weekly, since you moved to Montgomery County; is that correct? |

9

[DEFENDANT]: Yes. I – Is that clarified? Can I clarify?

\*.........\*.........\*

[PROSECUTOR]: I can ask that question again. You admit that as her father, you owed her a duty of care. You violated that duty of care by striking and strangling her routinely, at least weekly, since you moved to Montgomery County?

[DEFENDANT]: Yes.

[PROSECUTOR]: And you admit that this conduct that you just admitted to of assaulting your daughter tended to corrupt her morals. Would you agree with that?

[DEFENDANT]: Yes.

[PROSECUTOR]: Ate you admitting to that?

[DEFENDANT]: Yes.

[PROSECUTOR]: Moving on to MM, would you agree with me that MM is your son, and he has a date of birth of April 24th of 2003?

[DEFENDANT]: Yes.

[PROSECUTOR]: And you admit that in the last five years up until March 14th, you struck your son, MM, in the head repeatedly, causing him traumatic brain injury. Would you agree with that?

[DEFENDANT]: Yes.

[PROSECUTOR]: And when you struck him in the head, you would also use a PVC pipe, stick, and sometimes your fist?

[DEFENDANT]: Yes.

[PROSECUTOR]: And do you admit that you would him them at least – you would hit him at least weekly in the last two years before you were incarcerated on March 14, 2017?

[DEFENDANT]: Yes.

10

[PROSECUTOR]: Do you admit that on occasion in the last two years, prior to March 14, of 2017, you would pin MM down on the ground so he could not move, by sitting on him, and you would strike or strangle him, putting him at risk of serious bodily injury? Do you admit to that, sir?

[DEFENDANT]: Yes.

[PROSECUTOR]: Do you admit in the last two years that you would put lancets under MM's nails, causing him pain?

*.........*.........*

[PROSECUTOR]: I'll repeat that question. Sir do you admit that in the last two years, you put lancets under MM's nails, causing him pain?

[DEFENDANT]: Yes.

[PROSECUTOR]: And you admit that between January 1st of 2017 and March 14th of 2017, you strangled MM by putting your hands around his neck and squeezing, impeding his ability to breathe?

[DEFENDANT]: Yes.

[PROSECUTOR]: And do you admit that as his father, you owed him a duty of care, and you violated that duty of care by striking and strangling him routinely, at least weekly, since you moved to Montgomery County?

[DEFENDANT]: Yes.

[PROSECUTOR]: And you admit that this conduct tended to corrupt his morals?

[DEFENDANT]: Yes.

[PROSECUTOR]: And these incidents happened after you moved to Montgomery County in 2010; is that correct?

[DEFENDANT]: Yes.

[PROSECUTOR]: They occurred in Collegeville, Montgomery County, specifically; is that correct?

[DEFENDANT]: Specifically, yes.

11

(N.T. Guilty Plea, 2/27/18, at 25-31).

The record demonstrates that, with respect to Docket Number 3077-2017, Defendant acknowledged all of the incidents under this docket number relating to his children, R.M. and M.M., took place in Montgomery County, PA and occurred between 2012 and 2017. This was within the range set forth in the bills of information. Although the date range listed in the bills extended back to January 1, 2008, which would include the time before Defendant and his children moved to Pennsylvania in October 2010, the factual basis set forth above and agreed to by Defendant makes clear that these incidents all occurred between 2012 and 2017, which is a time period when Defendant lived in Montgomery County, PA.

The Commonwealth attempted to remedy the incorrect date range listed in the bills of information by filing a Motion to Amend which would have changed the beginning of the date range from January 1, 2008 to September 12, 2011. Defendant's entry of a negotiated guilty plea, however, eliminated the need for the court to hear this motion. There would have been no reason for trial counsel to object to the proposed amendment as it actually would have more accurately reflected the date range in which Defendant's criminal actions occurred. Further, the proposed amendment did not unfairly prejudice Defendant by seeking to expand the time Defendant's criminal actions were alleged to have occurred. Defendant was on notice from the date of the filing of the bills of information that his criminal actions allegedly occurred between 2008 and 2017. In light of these facts, the Commonwealth's proposed amendment to the bills of information for Docket Number 3076-2017 had no bearing upon the ultimate disposition of the matter or Defendant's decision to plea guilty and Defendant's ineffectiveness claim has no merit. *See Lewis, supra*.

## II.    ALLEGED INEFFECTIVENESS OF COUNSEL WITH RESPECT TO PSI REPORT

In his second issue, Defendant claims trial counsel was ineffective for failing to request the preparation of a PSI Report prior to sentencing. Defendant alleges his prior attorney entered into an agreement with the Commonwealth that a PSI would be prepared prior to his sentencing. Defendant avers

12

the PSI would have contained information which could have influenced the court to potentially impose a lesser sentence in the event the court did not accept the plea agreement.

Instantly, in his *Turner/Finley* "no merit letter" PCRA counsel notes how he spoke extensively with prior counsel, trial counsel and the prosecutor concerning Defendant's case. (March 26, 2019 *Turner/Finley* "No Merit" Letter at 28). PCRA counsel concluded that Defendant's assertion that prior counsel "in some way negotiated your final disposition is neither supported by the record nor my conversations with either of your Attorneys or the Prosecutor. [Prior counsel] attempted to negotiate your case. When you and he came to an impasse he was excused from your case and so was anything concerning your unresolved case that was discussed with the Commonwealth." (*Id.* at 28-29).

With respect to trial counsel's alleged ineffectiveness for failing to request a PSI Report, no purpose would have been achieved by requesting a PSI in light of Defendant's acceptance of a negotiated plea agreement. Defendant's claim that an investigation into his prior record history and mental health may have secured a more favorable plea deal or a more lenient sentence are mere speculation. Further, the result of the proceeding would not have been different had a PSI been ordered because a court may not unilaterally alter the agreed-upon terms of a valid plea agreement between a defendant and the Commonwealth. Although a trial court may refuse to accept a plea altogether, "when the parties enter the plea agreement on the record, and the court accepts and approves the plea, then the parties and the court must abide by the terms of the agreement." *Commonwealth v. Parsons*, 969 A.2d 1259, 1268 (Pa.Super. 2009) (*en banc*), *appeal denied*, 603 Pa. 685, 982 A.2d 1228 (2009).

In his written guilty plea colloquy, Defendant indicated he understood the PSI was not necessary in the context of a negotiated plea and waived his right to the preparation of a PSI prior to sentencing:

| 40. | Do you understand you have a right to a pre-sentence investigation (PSI) which will give the Court a statement of your past performance in the areas of: education; criminal history; family situation; disabilities; and general information regarding your plea to assist the Judge in sentencing? |
| --- | --- |

13

| [RESPONSE]: | Yes. |
|---|---|
| 41. | Do you understand that a PSI is usually waived if your plea agreement is accepted because the information is not needed to sentencing by the Judge? |
| [RESPONSE]: | Yes. |
| 42. | Do you waive the PSI in this case? |
| [RESPONSE]: | Yes. |

(Written Guilty Plea Colloquy, 2/26/18 at 7-8). During the guilty plea proceeding, Defendant again indicated he was waiving his right to a PSI:

| [THE COURT]: | The only question I would ask, is the defendant waiving his right to a Pre-Sentence Investigation and report before sentencing? |
|---|---|
| [DEFENSE COUNSEL]: | Yes, Your Honor, he is. |

(N.T. Guilty Plea, 2/27/18, at 23). At no point did Defendant contradict this assertion.

Defendant was aware of his right to the preparation of a PSI and knowingly, voluntarily and intelligently waived this right. Additionally, Defendant agreed to a negotiated sentence and therefore, the preparation of a PSI prior to sentencing was not necessary. Defendant acknowledged in his guilty plea colloquy that in light of this negotiated sentence, the court did not require the information found within a PSI in order to impose sentence. Moreover, even if a PSI had been ordered, the court would not have had the ability to alter the valid plea agreement. Accordingly, Defendant's ineffectiveness claim regarding the failure to request a PSI report has no merit. *See Lewis, supra.*

## III. ALLEGED LACK OF AWARENESS REGARDING CONSEQUENCES OF GUILTY PLEA

Lastly, although not listed as an "official" claim of ineffectiveness in his PCRA Petition, and not addressed as such by PCRA counsel, Defendant alleges that he was not aware of the consequences of entering a guilty plea.[7] This claim is belied by the record.

---

[7] Defendant raised this claim within the PSI portion of his petition.

14

"The law does not require that a [defendant] be pleased with the results of a decision to enter a guilty plea; rather all that is required is that [defendant's] decision to plead guilty be knowingly, voluntarily and intelligently made. A defendant is bound by the statements made during the plea colloquy, and a defendant may not later offer reasons for withdrawing the plea that contradict statements made when he pled." *Commonwealth v. Brown*, 48 A.3d 1275, 1277-78 (Pa.Super. 2012), *appeal denied*, 619 Pa. 684, 63 A.3d 773 (2013). (internal citations and quotation marks omitted).

Instantly, Defendant completed a written guilty plea colloquy stating that, *inter alia,* he was advised and aware of his rights; he understood the possible penalties for each charge; and he was entering into the plea of his own free will. (Written Guilty Plea Colloquy, 2/26/18 at 2-9). Additionally, the trial court conducted a thorough oral colloquy prior to accepting Defendant's guilty plea. (N.T. Guilty Plea, 2/27/18, at 10-36). During this colloquy, Defendant affirmed, *inter alia*, that he was doing this of his own free will, had adequate time to discuss the matter with trial counsel, was satisfied with trial counsel's representation and also admitted that he was guilty of the charges. (*Id.*). The court found Defendant's guilty plea was knowing, intelligent and voluntary. (*Id.* at 32). The record demonstrates Defendant understood his rights and the consequences of entering a guilty plea. Accordingly, to the extent Defendant is alleging trial counsel was ineffective for failing to advise Defendant of the consequences of entering a guilty plea, this claim has no merit. *See Lewis, supra; Brown, supra* (stating claims of counsel's ineffectiveness in connection with a guilty plea will provide a basis for relief only if the ineffectiveness actually caused an involuntary or unknowing plea).

15

## CONCLUSION

For the reasons set forth above, the court's May 6, 2019 Order dismissing Defendant's PCRA Petition without an evidentiary hearing was proper and should be affirmed.

BY THE COURT:

_____

**WENDY G. ROTHSTEIN,          J.**

Copies of the above Opinion sent on September 11, 2020:
**By E-Mail To:**
          Robert Falin, Esquire (District Attorney's Office)
**By First Class Mail To:**
          Joseph Kalin Myhre (Defendant) (SCI Houtzdale NH0996)

*Bri Kennedy*
Judicial Assistant

16